WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chester H. Dumke,<br><br>                    Plaintiff,<br><br>v.<br><br>Secretary of Health and Human Services,<br><br>                    Defendant. | NO. CIV-05-0268-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 16), and Defendant's Cross-Motion for Summary Judgment (Dkt. 17). After consideration of the arguments advanced by the parties, the Court makes the following rulings.

**BACKGROUND**

On October 12, 1987, Plaintiff underwent cochlear implant surgery on his right ear by C. Phillip Daspit, M.D. ("Dr. Daspit"). (AR, I at 109-10.) Under the direction of Dr. Daspit, Audiology Associates provided Plaintiff 53 hours of post-surgery cochlear rehabilitation services. Medicare paid for both the surgery and the 53 hours of rehabilitation services, which were rendered through May 1989. (AR, I at 109-10; IV at 887-89, 897, 920; VI at 1589, 1598-1616.)

On May 26, 1989, Dr. Daspit informed Plaintiff of the possibility that Medicare would deny payment for any additional post-surgery rehabilitation services because they

were no longer medically necessary. (AR, II at 289.) As a result, Dr. Daspit asked Plaintiff to pay in advance for rehabilitation services that were to be furnished after May 1989 by Kathleen Peterson, M.A., an audiologist who was running her private practice out of Dr. Daspit's office. (Id.) Dr. Daspit stated that his office would bill Medicare and reimburse Plaintiff any amount received. Plaintiff agreed to the terms of the May 26, 1989 letter. (Id.)

From June 1989 through February 1992, Plaintiff received cochlear rehabilitation services from Ms. Peterson who, during that time period, provided audiological services to Dr. Daspit's patients through her private practice, Audiology and Hearing Aid Services, Inc. (AR, II at 300; IV at 887-91, 897-98, 912-22, 937; V at 1247.) During this time period, Ms. Peterson's compensation was based on bills she submitted to Dr. Daspit for services rendered to his patients. (Id.)

Beginning in February 1992, Ms. Peterson became a part-time employee of Dr. Daspit, but only with respect to conducting diagnostic hearing tests on Dr. Daspit's clinic patients, for which she received an hourly wage. (AR, IV at 887-91.) During this time period, Ms. Peterson continued to provide cochlear rehabilitation services and hearing aid services through her private practice as an independent contractor, but these services were billed directly to the patients. (Id.)

Through its carrier, Aetna Life Insurance Company ("Aetna"), Medicare reimbursed Plaintiff for post-operative cochlear rehabilitation services provided by Ms. Peterson through August 8, 1989. (AR, IV at 887-91; VI at 1453-58.) Thereafter, Aetna denied nearly all of Plaintiff's claims for rehabilitation services provided by Ms. Peterson. (AR, VI at 1459-64, 1639-40.) When these claims for cochlear rehabilitation services were denied, Plaintiff filed administrative appeals and was successful in obtaining payment for some services provided through August 1989 and some services provided in 1990. (AR, III at 739-40; VI at 1623-37.)

At issue here is whether the remaining cochlear rehabilitation services provided to

Plaintiff by Ms. Peterson are covered by Medicare. The time periods at issue are for services rendered to Plaintiff from (i) September 1, 1989 through August 22, 1990; (ii) February 6, 1991 through December 18, 1991; and (iii) January 7, 1992 through September 11, 1992 (collectively, the "Pertinent Time Periods").

In a decision issued on February 28, 2003, Administrative Law Judge (the "ALJ") Joan G. Knight found that none of the rehabilitation services provided by Ms. Peterson during the Pertinent Time Periods were covered by Medicare. (AR, I at 104-14.) This ruling was rendered after a lengthy hearing held on January 27, 2003, at which Plaintiff testified. (AR, I at 132-80.) In so finding, the ALJ determined that (i) the cochlear rehabilitation services were provided by Ms. Peterson as an independent contractor, not "incident to" the professional services of a physician; and (ii) the cochlear rehabilitation services were therapeutic, not diagnostic, because they were neither ordered nor directed by Dr. Daspit for the purpose of obtaining information necessary to evaluate or treat Plaintiff. (AR, I at 110-14.)

The Medical Appeals Council ("MAC") denied Plaintiff's request for review of the ALJ's February 28, 2003 ruling on the grounds that the decision was thorough, consistent with law, and supported by substantial evidence. (AR, I at 6-8.)

Plaintiff now seeks judicial review of the Secretary's decision pursuant to 42 U.S.C. § 405(g). See 42 U.S.C. § 1395ff(b)(1)(A).

**STANDARD OF REVIEW**

The decision of the Secretary to deny benefits will be disturbed only if it is not supported by substantial evidence or is based on legal error. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Magallanes, 881 F.2d at 750.  To determine whether substantial evidence supports the ALJ's decision, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.  Id. However, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  Id.  The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation.  Id.

### DISCUSSION

Plaintiff argues that the following findings of the ALJ lack the support of substantial evidence, and thus warrant summary judgment in his favor:  (1) the cochlear rehabilitation services were provided by Ms. Peterson as an independent contractor and not "incident to" the professional services of Dr. Daspit; and (2) the cochlear rehabilitation services were not diagnostic because they were neither ordered nor directed by Dr. Daspit for purposes of obtaining information necessary to evaluate or treat Plaintiff. (Dkt. 16.)

### I. The Services Were Provided by Ms. Peterson as an Independent Contractor

To qualify for Medicare coverage, non-physician services must be "furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without a charge or included in the physicians' bills." 42 U.S.C. § 1395x(s)(2)(A); 42 C.F.R. §§ 410.10, 410.26.  The Medicare statute does not provide further details regarding what services and supplies may be considered as furnished "incident to" a physician's professional service.  Likewise, the relevant regulations lack details and simply parrot the general language of the statute.  See 42 C.F.R. §§ 410.10 and 410.26.  The Medicare Carrier's Manual (the "MCM"), however, elaborates on the content of § 1395x(s)(2)(A):  to be covered by Medicare, non-physician services "must be rendered under the physician's direct supervision by *employees* of the physician." See MCM § 2050.1, emphasis added.  An administrative interpretation – such as MCM § 2050.1 – is entitled to considerable deference unless it is plainly inconsistent

-4-

1 with the clear meaning of the statute and regulations or unreasonable. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45 (1984). Although it has not been addressed by the Ninth Circuit, the Tenth Circuit has held that the Secretary's statutory interpretation of "incident to" is reasonable and not inconsistent with the statute and regulations. See Downtown Medical Center v. Bowen, 944 F.2d 756, 758-60, 767-70 (10th Cir. 1991). This Court agrees.

In the present case, the six-volume administrative record supports the ALJ's findings that, during the Pertinent Time Periods, Ms. Peterson provided cochlear rehabilitation services to Plaintiff independently through her private practice and not as an employee of Dr. Daspit. See AR, I at 110-11. First, Ms. Peterson provided letters demonstrating that, until February 1992, she was an independent contractor. See AR, IV at 912-13, 935, 937, 920-23. Ms. Peterson's letters are corroborated by her tax records, Dr. Daspit's tax and billing records, and letters to Plaintiff. See AR, IV at 914-18, 887-91, 898-910, 919.

From February 1992 through September 11, 1992, Ms. Peterson became a part-time employee of Dr. Daspit, but continued providing cochlear rehabilitation services to Plaintiff and other patients through her private practice. See AR, IV at 912-13, 919-22, 934-35, 937. Dr. Daspit's office manager corroborated Ms. Peterson's representation, and explained that she was a part-time employee only with respect to conducting "diagnostic ABR-ECOG tests in the morning a couple of days a week for Dr. Daspit's clinic patients." See AR, IV at 887. The office manager explained that, although Ms. Peterson was paid "an hourly rate" as a part-time employee, her compensation from Dr. Daspit "did not include cochlear rehabilitation patients or hearing aid patients that were included in [her] private practice." See AR, IV at 887-88.

The billing records of Dr. Daspit are also consistent with the ALJ's finding that Ms. Peterson provided cochlear rehabilitation services to Plaintiff as an independent contractor during the Pertinent Time Periods. Although Dr. Daspit's practice, Arizona Otological

-5-

Associates, *initially* billed Medicare for the cochlear rehabilitation services provided by Ms. Peterson as an independent contractor, this was done as a courtesy to Plaintiff. See AR, IV at 887-91; VI at 1589-90. In July 1990 and September 1991, however, Plaintiff was informed that Dr. Daspit would no longer bill Medicare, and he was required to make payments for cochlear rehabilitation services directly to Ms. Peterson. See AR, IV at 898; VI at 1589-91.

The ALJ did not commit legal error in determining that, for the Pertinent Time Periods, no coverage was provided for Plaintiff's cochlear rehabilitation services because substantial evidence supports the finding that Ms. Peterson provided such services independently through her private practice, not as an employee of Dr. Daspit. See MCM § 2050.1 (to be covered by Medicare, non-physician services "must be rendered under the physician's direct supervision by employees of the physician").

Plaintiff contends he was denied due process because the ALJ did not require Dr. Daspit or Ms. Peterson to testify under oath at the hearing. (Dkt. 16 at 7, 10-13.) The Court rejects this contention because Plaintiff was not prejudiced by the absence of either Dr. Daspit or Ms. Peterson. To the contrary, as shown by the evidence discussed above, Dr. Daspit and Ms. Peterson submitted numerous letters, reports, and records in order to substantiate their business relationship during the Pertinent Time Periods. Moreover, based on the documents they submitted, the ALJ properly determined that Ms. Peterson provided cochlear rehabilitation services to Plaintiff independently through her private practice, not as an employee of Dr. Daspit. See Magallanes, 881 F.2d at 750 (ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation).

The Court likewise rejects Plaintiff's contention that the ALJ was required to temporarily stop, or otherwise postpone, the hearing based on the absence of Dr. Daspit and Ms. Peterson, because Plaintiff has not identified "material evidence" that was missing from the record or that could not be presented in their absence. See 20 C.F.R. § 404.944 ("The

administrative law judge *may* stop the hearing temporarily and continue it at a later date if he or she believes that there is *material evidence* missing at the hearing.") (emphasis added). The ALJ specifically found the written record sufficient to resolve the issues involving Dr. Daspit and Ms. Peterson.  See AR, I at 108.  Moreover, she provided Plaintiff extra time to offer additional arguments and considered his post-hearing brief as well as his hearing testimony.  See AR, I at 109, 132-80.

## II. The Rehabilitation Services Were Not Diagnostic

The Medicare statute provides that "medical and other health services" includes "diagnostic X-ray tests . . . , diagnostic laboratory tests, and other diagnostic tests," but does not specify which diagnostic tests are covered.  See 42 U.S.C. § 1395x(s)(3).  The regulations provide that diagnostic tests "must be ordered by the physician who is treating the beneficiary . . . for a specified medical problem and who uses the results in the management of the beneficiary's special medical problem."  42 C.F.R. § 410.32(a). Similarly, with respect to audiological tests, the MCM provides that "[d]iagnostic testing performed by a qualified audiologist is covered as 'other diagnostic tests' when a physician orders such testing for the purpose of obtaining additional information necessary for his evaluation of the need for or appropriate type of medical or surgical treatment for a hearing deficit or a related medical problem."  MCM § 2070.3; AR, VI at 1732-33.  The MCM precludes coverage for "therapeutic services" provided by privately practicing audiologists or audiologists on the staff of a clinic that is not physician-directed.  See AR, VI at 1733.

In the present case, the ALJ concluded that Ms. Peterson acted independently of Dr. Daspit in providing cochlear rehabilitation services to Plaintiff, "the purposes of which were to train him in hearing with the cochlear implant and to provide any adjustments needed in the processor to aid in this goal."  AR, I at 112.  The bases for the ALJ's conclusion were her findings that Ms. Peterson's cochlear rehabilitation services (i) were not furnished pursuant to Dr. Daspit's order; and (ii) were not "for the purpose of obtaining additional information

necessary for [Dr. Daspit's] evaluation of [Plaintiff's] need" for medical or surgical treatment because Dr. Daspit "already knew the cause" of Plaintiff's hearing deficit and had addressed it with surgery in 1987. Id. Based on these findings, the ALJ held that the cochlear rehabilitation services provided by Ms. Peterson during the Pertinent Time Periods were not covered by Medicare as "other diagnostic" tests. Id.

Relying on Medicare policies that are not pertinent to cochlear rehabilitation services, Plaintiff disputes the ALJ's conclusion that the services provided by Ms. Peterson during the Pertinent Time Periods were not covered by Medicare as "other diagnostic" tests. (Dkt. 16 at 15.) For two reasons, the Court disagrees.

First, none of the policies relied on by Plaintiff support his contention that the cochlear rehabilitation services provided by Ms. Peterson were "diagnostic," as required by 42 U.S.C. §1395x(s)(3), and construed by 42 C.F.R. § 410.32(a) and MCM § 2070.3. Likewise, Plaintiff's reliance on the MAP article, see AR, II at 410-11, is inapposite because the article states only that adjustments to a cochlear implant may be necessary "in the first three months" following implantation. (Id. at 411.) The article does not state that implant adjustments are "diagnostic," nor does it provide that adjustments are likely to be needed during the course of several years. (Id. at 411.)

Second, substantial evidence supports the ALJ's determination that the cochlear rehabilitation services provided by Ms. Peterson were therapeutic, not diagnostic, and thus not covered by Medicare. See 42 C.F.R. § 410.32(a); MCM § 2070.3. On May 26, 1989, Dr. Daspit informed Plaintiff that Medicare would probably deny payment for any additional post-surgery cochlear rehabilitation services because they were no longer medically necessary. (AR, II at 289.) In a July 26, 1990 letter, Dr. Daspit's office manager reminded Plaintiff that he had "far exceeded the normal amount of hours" for post-operative cochlear rehabilitation services as well as the Medicare payment limits for such services, and stated that Dr. Daspit's office would no longer continue the courtesy of billing Medicare for

-8-

cochlear rehabilitation provided by Ms. Peterson. (AR, VI at 1589-91.) On July 25, 1991, Dr. Daspit explained to Plaintiff that Medicare would not continue to pay for his "excessive" post-operative cochlear rehabilitation "therapy" because Plaintiff's "continued therapy" was not "a <u>medical</u> <u>necessity</u>," but instead his attempt "to achieve perfection with an imperfect situation." (AR, IV at 895, emphasis in original.) By letter dated July 26, 1991, Dr. Daspit informed the Fair Hearing Officer that Plaintiff had "far exceeded the norm for [post-operative cochlear] rehabilitation." (AR, IV at 897.) Dr. Daspit explained that Plaintiff was using Ms. Peterson's services "to fine tune the implant to his specification and desire," because he "is a perfectionist" who "is seeking hearing that is normal." (<u>Id.</u>) Like Dr. Daspit, Ms. Peterson similarly opined that the cochlear rehabilitation services she provided Plaintiff after May 1989 were "beyond the normal rehabilitation expected for a patient with a cochlear implant," that were rendered at Plaintiff's request, not at the request of Dr. Daspit. (AR, IV at 937; V at 1247.)

Third, in a document submitted during the administrative adjudication of his claims, Plaintiff admitted that "the primary purpose" of his cochlear rehabilitation sessions with Ms. Peterson was "to fine tune the processor to meet [his] needs." (AR, VI at 1440.) Based on this concession, the ALJ could have reasonably concluded that Plaintiff agreed with Dr. Daspit's conclusion that his "continued therapy" was not medical necessity, but instead Plaintiff's attempt "to achieve perfection" in an imperfect situation. (AR, IV at 895.)

For each of these reasons, the ALJ correctly determined that the cochlear rehabilitation services provided by Ms. Peterson during the Pertinent Time Periods were not covered by Medicare as "diagnostic tests." <u>See</u> 42 C.F.R. § 410.32(a); MCM § 2070.3.

The Court also rejects Plaintiff's argument that, before the January 27, 2003 hearing, the ALJ "had no record of receiving the Carrier Policy," which provides the allowable frequency of cochlear rehabilitation services. (Dkt. 16 at 14.) The administrative record includes a letter from Aetna to Dr. Daspit stating that Medicare had revised its policy

-9-

regarding coverage of cochlear implants to include one year of post-surgery rehabilitation testing and adjustment in order to permit payment in one lump sum for all services necessary for the effective use of the implant. (AR, V at 1394.) Aetna also explained that, if additional rehabilitation services for more than one year are advised by the specialist or audiologist, "documentation for medical necessity will be required." (Id.) Similarly, in a March 31, 1992 letter, Aetna notified Plaintiff that "the allowance for the [cochlear implant] surgery includes one year of therapy. Thereafter, six hours of therapy in a twelve month period is reasonable and medically necessary." (AR, V at 1251.) Both documents were available to the ALJ both at the hearing and when she issued her decision.

Finally, Plaintiff's request for injunctive and declaratory relief, as well as damages (dkt. 1; dkt. 16 at 16-17), is denied because he is not the prevailing party. Moreover, neither money damages nor injunctive relief are available in an action such as this one. See 42 U.S.C. § 405(g); Califano v. Yamasaki, 442 U.S. 682, 697-98, 705-06 (1979).

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is supported by substantial evidence. See Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Therefore, summary judgment in favor of Defendant is appropriate as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Chester H. Dumke's Motion for Summary Judgment is **DENIED**. (Dkt. 16.)

**IT IS FURTHER ORDERED** that the Secretary's Cross-Motion for Summary Judgment is **GRANTED** and **JUDGMENT IS ENTERED IN FAVOR OF THE SECRETARY AND AGAINST CHESTER H. DUMKE**. (Dkt. 17.)

DATED this 25th day of September, 2006.

Stephen M. McNamee
United States District Judge